JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KEVIN Y. FU (Cal. Bar No. 319465)
Assistant United States Attorney
Orange County Office
    8000 United States Courthouse
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3576
    Facsimile: (714) 338-3708
    Email:    Kevin.Fu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
FEB 2 4 2025
CENTRAL DISTRICT OF CALIFORNIA
BY aro DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>IGNACIO SANCHEZ HUERTA,<br><br>    Defendant. | No. 8:25-mj-00112-DUTY<br><br>NOTICE OF INTENT TO SEEK 10-DAY TEMPORARY DETENTION BASED ON IMMIGRATION STATUS AND MEMORANDUM OF LAW RE: 18 U.S.C. § 3142(d) |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kevin Y. Fu, hereby files this notice of intent to seek 10-day temporary detention based on the defendant's immigration status and memorandum of law regarding 18 U.S.C. § 3142(d) in the above-entitled case.

//

//

//

    This notice is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 24, 2025          Respectfully submitted,

                                  JOSEPH T. MCNALLY
                                  Acting United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  /s/ Kevin Y. Fu
                                  KEVIN Y. FU
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The government submits this memorandum to provide an overview of the law regarding the Bail Reform Act's temporary detention provision, 18 U.S.C. § 3142(d). It also hereby provides notice that the government intends to seek temporary detention of the defendant in the above-captioned case if the Court does not order permanent detention pending trial. This delay will allow the government to discuss any bond order with immigration authorities, so immigration authorities can decide whether to begin removal proceedings or to allow defendant to be released from custody and remain unlawfully present in the United States on bond. For the reasons that will be explained at the upcoming detention hearing, defendant qualifies for temporary detention under 18 U.S.C. § 3142(d).

### II.   LEGAL STANDARD

#### A.   Text of 18 U.S.C. § 3142(d)

The Bail Reform Act (the "Act") generally permits a judicial officer to either permanently detain a defendant pending trial or to release the defendant with appropriate conditions. But the Act also provides judicial officers with a third option: "temporary detention to permit . . . deportation, or exclusion." 18 U.S.C. § 3142(d) (capitalized altered). Under § 3142(d), a judicial officer "shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays" if such person "is not a citizen of the United States or lawfully admitted for permanent residence" and "such person may flee or pose a danger to any other person or the community." Id. (emphasis added).

1

The judicial officer shall also "direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." Id.

**B.   Purpose of 18 U.S.C. § 3142(d)**

Courts have recognized that § 3142(d) is "a notice provision designed to give other agencies an opportunity to take custody of a defendant before a [Bail Reform Act] release order is issued." United States v. Soriano Nunez, 928 F.3d 240, 246 (3d Cir. 2019). In cases such as this one, notice to immigration authorities of a judicial decision to release a defendant without legal status back into the United States is needed because "immigration authorities . . . have separate interests" than the United States Attorney's Office. United States v. Lett, 944 F.3d 467, 472 (2d Cir. 2019) (quoting Soriano Nunez, 928 F.3d at 246). "ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the [Bail Reform Act] pending his criminal trial." United States v. Vasquez-Benitez, 919 F.3d 546, 553 (D.C. Cir. 2019). And, in certain cases, immigration authorities may decide -- and are independently authorized to decide -- to remove a defendant during the pendency of a criminal case rather than allow the defendant to remain in the United States. See Lett, 944 F.3d at 472-73.

2

Section 3142(d) ensures that immigration authorities, who operate separately and distinctly from criminal law enforcement officers, have sufficient time to decide whether to exercise their civil removal authority before a defendant is released under the Act and is potentially able to evade a civil arrest. See Soriano Nunez, 928 F.3d at 246 ("By providing these other agencies an opportunity to take custody of such persons, the [Bail Reform Act] effectively gives respect to pending cases and allows those officials to act before bail is set in the federal case."). Even in cases where immigration authorities are aware of the defendant's criminal arrest, or have referred the defendant for criminal prosecution, immigration authorities have the right to independently evaluate whether to take the person into administrative custody should the Court not detain defendant under § 3142(e). See Vasquez-Benitez, 919 F.3d at 552 ("Detention of a criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities."). The law does not require immigration authorities to make such an assessment in advance, because a judicial officer's determination to release someone on bond in a criminal case pursuant to § 3142 is new information that immigration authorities must consider in deciding whether to exercise their civil removal authority. Temporary detention under § 3142(d) thus provides immigration authorities with a 10-day period to make this evaluation.

Temporary detention also allows immigration authorities to avoid the danger inherent in re-arresting a criminal defendant that has been released on bond. See Washington v. Chrisman, 455 U.S. 1,

1  7 (1982) ("Every arrest must be presumed to present a risk of danger
2  to the arresting officer. There is no way for an officer to predict
3  reliably how a particular subject will react to arrest or the degree
4  of the potential danger." (citation omitted)). As the Supreme Court
5  has explained, the purpose of the Bail Reform Act is "to assure the
6  safety of persons in the community and to protect against the risk
7  of flight." United States v. Montalvo-Murillo, 495 U.S. 711, 719-20
8  (1990). That important purpose is advanced by the orderly transfer
9  of individuals from criminal to civil custody.

### III. BURDENS GOVERNING APPLICATION OF TEMPORARY DETENTION

To obtain 10 days of temporary detention, the judicial officer must find two things: (1) the defendant "is not a citizen of the United States or lawfully admitted for permanent residence"; and (2) "such person may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d); see also United States v. Santos Flores, 794 F.3d 1088, 1091-92 (9th Cir. 2015) (discussing standard). The Act provides that, if the temporary detention provision is invoked, the defendant -- not the government -- "has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence." 18 U.S.C. § 3142(d).

The government also has a reduced burden to show flight and/or danger. Section 3142(d) requires a finding only that the defendant "may flee or pose a danger to any other person or the community" (emphasis added). That is a much lower showing than is required to secure a detention hearing -- "a serious risk" of flight, 18 U.S.C. § 3142(f)(2) -- or permanently detain a defendant -- "no condition or combination of conditions will reasonably assure the appearance

4

of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(e)(1). And courts must give effect to Congress's intentional choice to use different language, and require a much lower showing, in this section of the Bail Reform Act. See Lopez v. Sessions, 901 F.3d 1071, 1077-78 (9th Cir. 2018) ("Where Congress employs different language in related sections of a statute we presume these differences in language convey differences in meaning." (cleaned up)); United States v. Hernandez Cerrato, 2024 WL 1329296, at *2 (D. Md. Mar. 28, 2024) (applying this reasoning to different flight standards in the Act).

If the low standard for temporary detention is met, the judicial officer "shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays." 18 U.S.C. § 3142(d) (emphasis added). As Congress has recognized, a 10-day period provides "the minimal time necessary for [immigration authorities] to take whatever action on the existing conditional release that official deems appropriate," S. Rep. 98-255, at 17 (1983) (legislative history of Bail Reform Act), so a 10-day period is reasonable and appropriate and the court should permit the government that "minimal" period to consult with immigration authorities. Ultimately, "[t]he ten-day period is a limitation on the district court's authority to release a defendant pursuant to the [Bail Reform Act]." Lett, 944 F.3d at 472 (emphasis omitted); accord United States v. Barrera-Landa, 964 F.3d 912, 922 (10th Cir. 2020).

The government, however, always will attempt to quickly consult with immigration authorities. If immigration authorities make a final decision to forego removal proceedings, the government will

notify the Court expeditiously.  The defendant will then be subject to the other provisions of the Bail Reform Act, like any other criminal defendant.  See Santos-Flores, 794 F.3d at 1091 ("If the immigration official does not take custody of the defendant during that ten-day period, Congress directs the court to treat the defendant in accordance with the other provisions of the Bail Reform Act[.]").

**IV. CONCLUSION**

For the reasons explained above, the government intends to invoke the Bail Reform Act's temporary detention provision under § 3142(d) if the Court does not order permanent detention under § 3142(e) in this case.